UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BANK OF AMERICA, N.A., | Case No. 2:16-CV-675 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| HOLLOW DE ORO HOMEOWNERS ASSOCIATION, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Bank of America, N.A.'s ("BOA") motion for partial summary judgment. (ECF No. 30). Defendants Williston Investment Group, LLC, ("Williston") and Hollow De Oro Homeowners' Association ("the HOA") filed responses (ECF Nos. 40, 41), to which plaintiff replied (ECF Nos. 42, 43).

Also before the court is defendant Williston's motion for summary judgment. (ECF No. 31). Plaintiff filed a response (ECF No. 38), to which defendant replied (ECF No. 44).

Also before the court is defendant HOA's motion for summary judgment. (ECF No. 32). Plaintiff filed a response (ECF No. 39), to which defendant replied (ECF No. 45).

**I.     Facts**

This case involves a dispute over real property located at 2117 Summer Lily Avenue, North Las Vegas, Nevada (the "property"). On November 24, 2008, Magdelyn Vasquez-Castro obtained a loan in the amount of $212,199 from non-party Universal American Mortgage Company, LLC, ("UAMC") to purchase the property. (ECF No. 1). The loan was secured by a deed of trust recorded on November 26, 2008. *Id.*

On March 22, 2010, the deed of trust was assigned to BAC Home Loans Servicing, LP, via an assignment of deed of trust (recorded on April 2, 2010). *Id.*; (ECF No. 30-3). On July 1, 2011, BAC Home Loans Servicing, LP, merged with plaintiff. (ECF No. 1). The note and senior deed of trust are insured by the Federal Housing Administration ("FHA"). *Id.*

On March 15, 2012, defendant Absolute Collection Services ("ACS"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $1,061.04. *Id.* On June 20, 2012, ACS recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $1,863.55. *Id.*

On October 16, 2012, NAS recorded a notice of trustee's sale, stating an amount due of $3,827.43 and an anticipated sale date of December 11, 2012. *Id.* On July 16, 2012, plaintiff requested a ledger from the HOA, through ACS, that identified the super-priority amount owed to the HOA. *Id.* In the request, plaintiff stated "[Nine months of assessments for common expenses incurred before the date of your notice of delinquent assessment] is the amount [BOA] should be required to rightfully pay to fully discharge its obligations to the HOA per NRS 116.3102 and my client hereby offers to pay that sum upon presentation of adequate proof of the same by the HOA." (ECF No. 1-1). On July 26, 2012, the HOA, through ACS, responded by requesting proof that plaintiff held an interest in the property. *Id.* Neither party offers evidence that plaintiff replied to this request.

On March 12, 2013, the HOA foreclosed on the property. (ECF No. 1). Williston purchased the property at the foreclosure sale for $7,600. *Id.* A foreclosure deed in favor of Williston was recorded on March 19, 2013. *Id.*

On June 15, 2015, BOA filed the underlying complaint, alleging four causes of action: quiet title against all defendants; breach of NRS 116.1113 against the HOA and ACS; wrongful foreclosure against the HOA and ACS; and injunctive relief against Williston. *Id.* On March 9, 2017, the court granted defendant HOA's motion to dismiss in part, thereby dismissing plaintiff's claims for breach of NRS 116.1113 and wrongful foreclosure. (ECF No. 39).

In the instant motions, plaintiff, defendant HOA, and defendant Williston all move for summary judgment in their favor. (ECF Nos. 30, 31, 32).

**James C. Mahan**
**U.S. District Judge**

- 2 -

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

As an initial matter, the court takes judicial notice of the following recorded documents: the first deed of trust (ECF No. 30-1); the assignment to BOA; (ECF No. 30-3); the notice of delinquent assessment (ECF No. 30-4); the notice of default and election to sell (ECF No. 30-5); the notice of trustee's sale (ECF No. 30-6); and the trustee's deed upon sale (ECF No. 30-8). *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (holding that a court may take judicial notice of public records if the facts noticed are not subject to reasonable dispute); *Intri-Plex Tech., Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property

in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the Nevada Revised Statutes[1] gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. BOA*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

(a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;

---
[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

(b) The elapsing of the 90 days; and
(c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded trustee's deed upon sale, the recorded notice of delinquent assessment, the recorded notice of default and election to sell, and the recorded notice of trustee's sale. *See* (ECF No. 30-3, 30-4, 30-5, 30-6, 30-8). Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure. *See id.* at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure."). Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle Williston to success on its quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the

---

[2] The statute further provides as follows:

2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

James C. Mahan
U.S. District Judge

- 6 -

question remains whether BOA has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

BOA raises the following grounds in support of its motion for summary judgment: the constitutionality of NRS 116.3116 and the Ninth Circuit decision in *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*"); rejected tender; commercial reasonability under *Shadow Wood*; FHA insurance coverage and pre-emption; and retroactivity of *SFR*. (ECF No. 30). As set forth in further detail below, the court finds that BOA has failed to set forth sufficient grounds to justify setting aside the foreclosure sale and has not raised a genuine issue to withstand summary judgment.

### 1. *Due process*

BOA argues that NRS Chapter 116 is unconstitutional under *Bourne Valley*, wherein the Ninth Circuit held that the HOA foreclosure statute is facially unconstitutional. (ECF No. 30). BOA further contends that *Bourne Valley* renders any factual issues concerning actual notice irrelevant. *Id.* at 7.

The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

"A first deed of trust holder only has a constitutional grievance if he in fact did not receive reasonable notice of the sale at which his property rights was extinguished." *Wells Fargo Bank, N.A. v. Sky Vista Homeowners Ass'n*, No. 315CV00390RCJVPC, 2017 WL 1364583, at *4 (D. Nev. Apr. 13, 2017). To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate

James C. Mahan
U.S. District Judge

- 7 -

procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). BOA has failed on both prongs.

Here, BOA has failed to show that it did not receive proper notice. During discovery, BOA stated that it received the notice of default. (ECF No. 31-10 at 3). In addition, the fact that BOA contacted ACS regarding the pending foreclosure sale demonstrates that BOA had notice of the sale. (ECF No. 1-1). Therefore, BOA's due process argument fails as a matter of law. *See, e.g.*, *Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity.").

Further, BOA confuses constitutionally mandated notice with the notices required to conduct a valid foreclosure sale. Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

Accordingly, BOA has failed to show that summary judgment is proper based on *Bourne Valley*.

### 2. Tender

BOA contends that the deed of trust still encumbers the property because the HOA/ACS wrongfully rejected BOA's tender of the superpriority amount. (ECF No. 30). The court disagrees as BOA did not tender the amount set forth in the notice of default. Rather, BOA stated that it would pay a lesser amount, consisting of nine months of assessments, if ACS provided BOA with that number. (ECF No. 1-1). ACS responded with a request that BOA prove it held an interest in the property. *Id.* BOA does not allege that it responded to this request.

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, BOA could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D.

Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The superpriority lien portion, however, consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411 (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162."); *Horizons at Seven Hills Homeowners Association v. Ikon Holdings, LLC*, 373 P.3d 66 (Nev. 2016) ("*SFR* characterized the superpriorty piece as including 'the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges.'").

BOA merely presumed, without adequate support, that the amount set forth in the notice of default included more than the superpriority lien portion and that a lesser amount be sufficient to preserve its interest in the property. *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale).

The notice of default recorded June 20, 2012, set forth an amount due of $1,663.55. (ECF No. 1). Rather than tendering the amount due so as to preserve its interest in the property and then later seeking a refund of any difference, BOA requested a statement of account based on its unwarranted assumption that the amount stated in the notice included more than what was due. *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund). Had BOA paid the amount set forth in the notice of default, the HOA's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1).

After failing to use the legal remedies available to BOA to prevent the property from being sold to a third party—for example, seeking a temporary restraining order and preliminary injunction and filling a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—BOA

now seeks to profit from its own failure to follow the rules set forth in the statutes. *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

Accordingly, the deed of trust does not still encumber the property as BOA failed to tender the amount due prior to the foreclosure sale.

### 3. *Commercial reasonability*

BOA argues that the foreclosure sale was commercially unreasonable because the property sold at approximately 5% of its fair market value,[3] which is grossly inadequate so as to justify setting the foreclosure aside. (ECF No. 30). BOA further argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." (ECF No. 30 at 25) (emphasis omitted).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[4]

---

[3] Here, the foreclosure sale price was $7,600 and the fair market value as estimated by plaintiff's expert was $153,500. (ECF No. 30).
[4] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable);

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Despite BOA's assertion to the contrary, the *Shadow Wood* court did not adopt the restatement. In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court's adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement

---

*Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Nevertheless, BOA fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale. BOA relies on its repeated assertion that BOA tendered the superpriority amount to show fraud, unfairness, or oppression. However, as the discussed in the previous section, the amount due was set forth in the notice of default. Rather than tendering the noticed amount under protest so as to preserve its interest and then later seeking a refund of the difference in dispute, BOA chose to request a statement of account based on the belief that it could tender a lesser amount to avoid foreclosure. This is insufficient to satisfy the requirements for sufficient tender.

BOA also argues that this court's precedent in *ZZYX2 v. Dizon*, no. 2:13-cv-01307-JCM-PAL, 2016 WL 1181666 (D. Nev. Mar. 25, 2016), requires a finding of fraud, unfairness, or oppression in this case based on the CC&R's governing the property. Although BOA argues that the "CC&Rs contain a provision that expressly represents that the lien of assessments is inferior and subordinate to the lien of a first mortgage or first deed of trust," this court has previously distinguished *ZYZZX2* from facts similar to those presented here. *See Bayview Loan Servicing, LLC v. SFR Invs. Pool 1, LLC*, No. 2:14-cv-1875-JCM-GWF, 2017 WL 1100955, at *9 (D. Nev. Mar. 22, 2017) (discussing the legal impact of NRS 116.1104 on declarations regarding lien priority made in CC&Rs and noting that the HOA in ZYZZX2 also sent out misleading mailings). Thus, BOA's argument based on *ZYZZX2* is unpersuasive.

Accordingly, BOA's commercial reasonability argument fails as a matter of law as it failed to set forth evidence of fraud, unfairness, or oppression. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2 n.2 (Nev. App. Apr. 17, 2017) ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

### *4. Preemption*

BOA argues that the HOA lien statute cannot interfere with the federal mortgage insurance program or extinguish mortgage interests insured by the FHA. (ECF No. 30).

The single-family mortgage insurance program allows FHA to insure private loans, expanding the availability of mortgages to low-income individuals wishing to purchase homes. *See Sec'y of Hous. & Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970, 980–81 (C.D. Cal. 2000) (discussing program); *Wash. & Sandhill Homeowners Ass'n v. Bank of Am., N.A.*, No. 2:13-cv-01845-GMN-GWF, 2014 WL 4798565, at *1 n.2 (D. Nev. Sept. 25, 2014) (same). If a borrower under this program defaults, the lender may foreclose on the property, convey title to HUD, and submit an insurance claim. 24 C.F.R. § 203.355. HUD's property disposition program generates funds to finance the program. *See* 24 C.F.R. § 291.1.

At least two courts in this district, including this court, have previously held that the Nevada foreclosure statutes directly conflict with the FHA insurance program, and are therefore preempted. *SaticoyBayLLC, Series 7342 Tanglewood Park v. SRMOF II 2012-1 Trust*, No. 2:13–CV–1199 JCM (VCF), 2015 WL 1990076, at *4 (D. Nev. Apr. 30, 2015); *Wash. & Sandhill*, 2014 WL 4798565, at *1.

However, more recently, multiple courts in this district, and the Supreme Court of Nevada, have held that the FHA insurance program does not conflict with the Nevada foreclosure statutes.[5] *Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 106 F. Supp. 3d 1174, 1184 (D. Nev. 2015)

---

[5] This court's recent holdings on the topic, including a prior order in this case, have declined to address the issue, holding that as FHA was not a named party the arguments regarding preemption were not properly before the court. *See* (ECF No. 29); *see also,, e.g., Carrington Mortg. Serv., LLC v. Montecito Village Community Ass'n*, case no. 2:16-cv-01780-JCM-PAL, 2017 WL 2945725, at *9 (D. Nev. July 7, 2017).

("Nothing prevents a lender from simultaneously complying with HUD's program and Nevada's HOA-foreclosure laws."); *JPMorgan Chase Bank, N.A. v. SFR Invs. Pool 1, LLC*, 200 F. Supp. 3d 1141, 1166 (D. Nev. 2016) ("The Court concludes that conflict preemption does not apply in this case. Lenders are perfectly capable of complying with both HUD's program and NRS 116.3116 . . . ."); *Renfroe v. Lakeview Loan Servicing, LLC*, 398 P.3d 904, 909 (Nev. 2017) ("Because the HUD guidelines for the FHA insurance program clearly contemplate and anticipate statutory schemes such as NRS 116.3116, the doctrine of conflict preemption does not apply in this case."). These opinions provide persuasive reasoning to support defendants' assertion that a lender can comply with both the HOA foreclosure laws and HUD's insurance program.

The court holds that the Nevada foreclosure statutes do not directly conflict with the FHA insurance program for preemption purposes. *See Renfroe*, 398 P.3d at 909. Thus, BOA's preemption argument does not justify setting aside the underlying foreclosure sale.

### 5. *Retroactivity*

BOA contends that *SFR Investments* should not be applied retroactively to extinguish the first deed of trust. (ECF No. 24 at 26).

The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR Investments*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. BOA*"). Thus, *SFR Investments* applies to this case.

### IV. Conclusion

In light of the foregoing, Williston and the HOA have shown that they are entitled to judgment as a matter of law. Williston has provided the recorded foreclosure deed in its favor,

which is conclusive of the recitals contained therein, and has shown that its interest in the property is superior to that of BOA's interest. On the other hand, the court finds that BOA has failed to show that it is entitled to judgment as a matter of law on its quiet title claim against Williston and the HOA. Further, BOA has provided no grounds to justify setting aside the otherwise valid foreclosure sale. Therefore, the court will grant Williston (ECF No. 31) and the HOA's (ECF No. 32) motions for summary judgment and deny BOA's motion for summary judgment (ECF No. 30).

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Williston's motion for summary judgment (ECF No. 31) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 32) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that BOA's motion for summary judgment (ECF No. 30) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Williston shall prepare a proposed judgment consistent with this order and submit it to the court within thirty (30) days of the filing of this order.

DATED January 23, 2018.

_____
UNITED STATES DISTRICT JUDGE